UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLO GIUSEPPE CIVELLI, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-03739 |
| | § | |
| PHILIPPE EMANUEL MULACEK, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**POST-JUDGMENT APPLICATION FOR TURNOVER AND
APPOINTMENT OF A RECEIVER**

### I.    INTRODUCTION

1.      Plaintiff, Carlo Giuseppe Civelli ("Applicant"), moves for a turnover order

and the appointment of a Receiver over the assets of Philippe Mulacek ("Phil Mulacek")

and Pierre Mulacek[1] ("Pierre Mulacek") to aid collection of the Court's $210,000,000.00

Final Judgment in Civelli's favor.[2] The administrative stay expired on May 25, 2026.

Defendants have neither posted a supersedeas bond nor paid any portion of the Final

Judgment. Turnover and appointment of a Receiver are warranted under Rules 64(a),

69(a)(1) and 66, and Section 31.002 of the Texas Civil Practice and Remedies Code

because Applicant has a valid judgment, Defendants own nonexempt assets which may be

liquidated to pay the judgment, and each of the factors in *Santibanez v. Wier McMahon &

Co.*, 105 F.3d 234, 239 (5th Cir. 1997) weighs in favor of the appointment of a Receiver.

---

[1] Applicant is not seeking a receivership for Michelle Mulacek Vinson or Mauricette Vinson at this time, but may seek that relief subsequent to this application. For now, Applicant seeks turnover of some of Michelle Mulacek and Mauricette Mulacek's specific non-exempt assets.

[2] Dkt. No. 1224.

## II.    PARTIES

2.    Applicant Carlo Giuseppe Civelli, Individually (and as assignee of Aster Capital S.A. (Ltd) Panama) is Plaintiff and the judgment creditor. Defendants/Judgment-Debtors are Philippe Emanuel Mulacek, Michelle Mulacek Vinson, Pierre Mulacek and Mauricette Mulacek (collectively "Respondents" or "Debtors").

## III.    SERVICE

3.    Judgment Debtors  Philippe Emanuel Mulacek, Michelle Mulacek Vinson, Pierre Mulacek, and Mauricette Mulacek may be served by serving their counsel of record, R. Paul Yetter, Yetter Coleman, LLP, 811 Main Street, Suite 4100, Houston, Texas 77002.

## IV.    FINAL JUDGMENT

4.    On March 26, 2026, this Court signed a Final Judgment which awarded Applicant the following damages:

**A. Against Philippe Emanuel Mulacek:**

a. $30,821,022.00 in actual damages on the claim for breach of the Loan Share Agreement;

b. $17,258,927.97 for pre-judgment interest on the claim for breach of the Loan Share Agreement, calculated as simple interest at a rate of 6.75% from December 11, 2017, through March 26, 2026;

c. $34,268,404.00 in actual damages for the remaining contract claims, except for the claim for breach of the NPI Agreement; and

d. $17,833,183.63 for pre-judgment interest on the remaining contract claims, except for the claim for breach of the NPI Agreement, calculated as simple interest at the rate of 6.75% per year from July 13, 2018, through March 26, 2026.

**B. Against Phil Mulacek, Michelle Mulacek Vinson, Pierre Mulacek and Mauricette Mulacek, jointly and severally:**

a. $72,459,146.00 for actual damages on the claim for breach of the NPI Agreement under which Phil Mulacek agreed to pay Carlo Civelli 20% of the net profits from the sale of Indirect Participation Interests of 12.6805 percent; and

b. $37,707,541.09 for pre-judgment interest on actual damages for breach of the NPI Agreement, calculated as simple interest at the rate of 6.75% per year from July 13, 2018, through March 26, 2026.

The Final Judgment awarded post-judgment interest at the rate of 3.48%, compounded annually, from the date of the entry of the Final Judgment until it is paid in full.[3] Interest accrues at $20,055.12 per day. As of May 26, 2026, Judgment Debtors owe Civelli $211,571,586.91. Respondents have paid nothing on the judgment that would entitle them to any credit. Respondents have appealed the Final Judgment but have not posted a supersedeas bond or other security, and the Court has not approved any such security under Federal Rule of Civil Procedure 62.

## V.    AUTHORITY FOR TURNOVER AND RECEIVERSHIP

5.     A federal court may enforce a money judgment consistent "with the procedure of the state where the court is located[.]"[4] The inquiry, then, begins with the Texas turnover statute.[5]

6.     The Texas Turnover Statute, in pertinent part, provides:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction, including a justice court, through injunction or other means in order to reach

---

[3] Dkt. No. 1224.

[4] Fed. R. Civ. P. 69(a)(1); *see also* Fed. R. Civ. P. 64 ("[T]hroughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.").

[5] *Ettorre v. Tussos Westheimer Inc.*, 677 F. Supp. 3d 644, 646–47 (S.D. Tex. 2023).

property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

(2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.[6]

The Court may enter an order that requires turnover of nonexempt property without identifying in the order the specific property subject to turnover.[7] The judgment creditor is entitled to recover reasonable costs, including attorneys' fees.[8]

7.      District courts enjoy broad discretion in issuing turnover orders.[9] The Court may enter the order ex parte.[10]

8.      Under the Texas Turnover Statute, a judgment creditor is entitled to aid from a court to reach property to satisfy a judgment.[11] The statute allows the court to reach assets

---

[6] Tex. Civ. Prac. & Rem. Code § 31.002 (the "Texas Turnover Statute").

[7] *Id.* § 31.002(h). Exemptions may be found in The Texas Property Code, sections 41 and 42, The Texas Constitution, Article 16, and Texas Insurance Code section 1108.

[8] *Id.* § 31.002(e).

[9] *Ettorre*, 677 F. Supp. 3d at 647.

[10] *Bear, Stearns & Co. v. Amad*, 919 F.2d 920, 922 (5th Cir. 1990) (citing *Ex parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983)); *see also Ross v. 3D Tower Ltd.*, 824 S.W.2d 270, 272 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

[11] *Ettorre*, 677 F. Supp. 3d at 647; Tex. Civ. Prac. & Rem. Code § 31.002(a).

4

owned and subject to the control of a judgment debtor, even if those assets are in the hands of a third party.[12]

9.      A turnover order is reviewed for abuse of discretion and may be reversed only if the trial court acted unreasonably or arbitrarily.[13]

10.      "A judgment creditor need only trace assets to a judgment debtor before a 'presumption arises that the judgment debtor possesses the assets subject to turnover and the burden shifts to the judgment debtor to account for the assets.'"[14]

11.      "Section 31.002 does not specify or restrict the way in which evidence may be received for a trial court to determine whether section 31.002(a) is satisfied."[15] "Nor does the statute require that such evidence be in any particular form, that the evidence be at any particular level of specificity, or that the evidence reach any particular quantum before the court may grant aid under section 31.002."[16]

---

[12] *Id.*

[13] *Id.*

[14] *Johns Law Firm, LLC v. Pawlik*, No. 4:22-CV-01877, 2024 WL 5185685, at *1 (S.D. Tex. Sept. 20, 2024), *report and recommendation adopted*, No. 4:22-CV-01877, 2025 WL 754502 (S.D. Tex. Mar. 10, 2025) (quoting *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018)).

The turnover statute no longer requires a judgment creditor to prove that the debtor's property cannot be readily attached or levied upon by ordinary legal process. The Texas Legislature amended section 31.002(a) effective June 15, 2017, by deleting the requirement that property to be turned over "cannot readily be attached or levied on by ordinary legal process." See Act of May 24, 2017, 85th Leg., R.S., ch. 996, § 1, 2017 Tex. Sess. Law Serv. 4026, 4026 (eff. June 15, 2017). Now the creditor must show only that the debtor owns nonexempt property. Tex. Civ. Prac. & Rem. Code § 31.002.

[15] *Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830, 835 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (citing *Hamilton Metals, Inc. v. Global Metal Servs., Ltd.*, 597 S.W.3d 870, 878–79 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

[16] *Id.* (citing *Hamilton Metals*, 597 S.W.3d at 878–79).

12.     Texas courts have applied the Texas Turnover Statute to reach a wide variety of property, including shares of stock and accounts receivable,[17] promissory notes,[18] and brokerage accounts.[19]

13.     Once a judgment creditor has shown that it is entitled to turnover relief, the court may order the judgment debtor to turn over nonexempt property for execution, apply the property to the satisfaction of the judgment, or appoint a receiver.[20] Applicant need not show that other methods of collecting the judgment have failed. *CNH Capital America LLC v. Gonzalez*, No. 7:11-CV-3322013 WL 12657240 *1 (S.D. Tex. March 26, 2013) (citing *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 78 (5th Cir. 1995)).

14.     Courts typically consider several factors in determining whether there is a need for a receiver, including:

(1) whether there exists a valid claim by the party seeking the appointment;

(2) the probability that fraudulent conduct has occurred or will occur;

(3) the likelihood of imminent danger that property will be concealed, lost, or diminished in value;

(4) the inadequacy of legal remedies;

(5) the lack of a less drastic equitable remedy; and

(6) the likelihood that appointing the receiver will do more good than harm.[21]

Each of these factors weighs in favor of the appointment of a Receiver.

---

[17] *See Arndt v. National Supply Co.*, 650 S.W.2d 547, 549 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

[18] *See Matrix, Inc. v. Provident Am. Ins. Co.*, 658 S.W.2d 665, 668 (Tex. App.—Dallas 1983, no writ).

[19] *See World Fuel Servs. Corp. v. Moorehead*, 229 F. Supp. 2d 584, 587 (N.D. Tex. 2002).

[20] *Id.* at 587–88; *see* Tex. Civ. Prac. & Rem. Code § 31.002(b)(1)–(3).

[21] *Ettorre*, 677 F. Supp. 3d at 648 (citing *Santibanez*, 105 F.3d at 241–42).

(1) Civelli has a valid judgment against the Respondents.

(2) There is a high probability that fraudulent conduct has occurred and will continue.

    a. After the jury's verdict, Phil Mulacek transferred his Singapore residence—worth more than SNG $5 million—to his son Sterling Mulacek, who lives and works in Houston, not Singapore.

    b. At trial, the evidence showed Phil Mulacek fabricated the Letter of Wishes after testifying only weeks before that no such document existed.

    c. Mulacek also fabricated corporate resolutions for Commodities Trading and Eurostar and submitted false documents to Butterfield Trust in the Bahamas.

    d. The evidence showed Mulacek controlled The Vinson Trust, which he put in the name of Pierre Mulacek. Phil Mulacek controlled bank accounts in Luxembourg in the names of his sister, Michelle, and mother, Mauricette. Gerard Jacquin (his cousin) and Christian Vinson (his brother-in-law) held cash in foreign accounts in their names, without disclosure that the funds were held for the Mulacek family.

    e. Phil Mulacek has pledged high value vintage cars as security for his personal debt, which are titled in Montana under Pirate Cossum LLC.[22]

---

[22] The UCC Financing Statement Amendment, attached as exhibit A-1 to the Declaration of Richard Schwartz, shows Goldman Sachs International Bank released four vehicles (VIN 07633 1966 FERR 275 GTB,  VIN P1058 1967 FORD GT 40, VIN CSX2567 1965 SHEB COBRA, VIN CSX3272 1966 FORD SHELBY COBRA) and which were held as collateral for a debt of Philippe Emanuel Mulacek, Debtor. Three of these vehicles are titled in the name of Pirate Cossum LLC, a Montana entity. See exhibit A-2 to the Declaration of Richard Schwartz, Montana DMV records. Nevertheless, Mulacek treats these assets as his own.

    f.  Mulacek transferred InterOil shares beneficially owned by Aster Capital SA from the United States to an account held by a copycat company, Aster Capital, Inc., at the Bank of Singapore. He placed Gerard Jacquin and Christian Vinson as beneficial owners of those accounts and of Aster Capital Inc., while secretly controlling both and denying any involvement.

    g.  Mulacek's testimony shifted repeatedly. The Court has questioned Phil Mulacek's credibility more than once. Neither Phil Mulacek, Michelle Mulacek, nor Christian Vinson was a credible witness. The Court may take judicial notice of the evidence from the trial.[23] Respondents have also refused to disclose their assets—declining a hearing on bond reduction and refusing to answer Plaintiffs' post-judgment discovery.[24]

(3)    For the same reasons set forth in (2) above, there is an imminent danger that property will be concealed, lost, or diminished in value. Respondents have told the Court they cannot obtain a bond for the full judgment—a powerful incentive to conceal, dispose of, or diminish their assets.

(4)    Legal remedies are inadequate. Without a Receiver, the Court and the parties will be mired in constant litigation over assets hidden in the names of straw purchasers, shell corporations, and foreign citizens.

---

[23] Fed. R. Evid. 201(b); *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985).

[24] Plaintiffs served post-judgment discovery requesting Defendants' submittals to the bonding company and asset details and requested the Court shorten time for response. Dkt. 1231. Defendants did not agree to shorten time or provide the documents. Defendants asserted they were not required to respond to Plaintiffs' Requests for Production until the stay of execution ended. When the stay expired on May 25, Plaintiffs asked for responses by May 29. Defendants have asserted responses are not due until June 25th. Plaintiffs do not anticipate full responses will be made at that time and this discovery will require the Court's assistance.

(5)    There is no less drastic equitable remedy. Respondents have engaged in repeated evasive conduct. Phil Mulacek has already transferred his Singapore residence to his son. Absent a Receiver, Respondents will continue to liquidate, transfer, and encumber assets, placing property in imminent danger of being concealed, lost, or diminished in value. Respondents are determined not to satisfy the judgment.

(6)    The appointment of a Receiver will do more good than harm. Appointing a Receiver will facilitate faithful execution of the judgment without any countervailing harm. It is the most efficient way to identify Respondents' nonexempt assets, sell them for the greatest value, and pay the judgment, while minimizing the burden on the parties and the Court. A Receiver avoids the need for separate writs of execution on each asset and piecemeal, asset-by-asset disputes for the Court to resolve. The Receiver, as an agent of the Court, may interview witnesses, take testimony, and obtain documents, avoiding discovery disputes between the parties.

15.    Plaintiffs request that the Court appoint David Fettner as Receiver. He is well qualified to serve. His resume is attached as Exhibit B. His address is 6700 Sands Point Drive, Houston, Texas 77074. His telephone number is (713) 626-7277. And his email address is daf@receivertexas.com.

16.    A turnover order and the appointment of a Receiver are warranted in this case.

## VI.    PROPERTY

17.    Plaintiffs' research on Respondents' assets is ongoing. To date, Plaintiffs have identified the following nonexempt assets that public records show are owned by Respondents:

a. **Common Shares of Empire Petroleum Corporation owned directly or indirectly as reflected in Philippe Mulacek's Form 4 dated March 12, 2026.**[25]

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 03/10/2026 | | M | | 1,003,344 | A | $2.99 | 7,177,076 | D | |
| Common Stock | | | | | | | | 817,262 | I | By Petroleum Independent & Exploration LLC |
| Common Stock | | | | | | | | 526,300 | I | By Big Red Revocable Trust |
| Common Stock | | | | | | | | 485,202 | I | By Five Sterling LP |
| Common Stock | | | | | | | | 42,833 | I | By spouse |

Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

b. **Derivative Securities in Empire Petroleum Corporation owned directly by Philippe Mulacek as reflected in the Form 4 signed by Philippe Mulacek on March 12, 2026.**[26]

Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Convertible Note Due 2026 | $2.99 | 03/10/2026 | | M | | | $3,000,000 | 02/19/2026 | 05/19/2026 | Common Stock | 1,003,344 | $0 | $0 | D | |

c. **Common Shares of ExxonMobil stock owned by Phil Mulacek** as reflected in Form 8949 of the Amended Joint Tax Return of Philippe and Kathleen Mulacek filed October 10, 2019.[27]

---

[25] Declaration of Richard A. Schwartz, Exhibit A-3, Phil Mulacek Form 4.

[26] *Id.*

[27] Declaration of Richard A. Schwartz, Exhibit A-4, Phil and Kathleen Mulacek Joint Tax Return, Form 8949.

ExxonMobil acquired InterOil Corporation February 23, 2017 for $2.5 billion.[28] InterOil shareholders received 0.5459 shares of ExxonMobil stock for every share of InterOil stock owned.[29] Mulacek's Form 8949 shows 1,704,118 shares valued at $81,837,414 in the category "InterOil buyout."[30] An additional 1,048,553 shares are listed as "InterOil Escrow," which may refer to Phil Mulacek's interest in Escrow Verification Receipts (EVRs), which are the basis for Phil Mulacek's suit against ExxonMobil pending in the Supreme Court of New York.[31]

d. **Multiple real properties, including approximately 1800 acres in New Mexico, and vintage vehicles** titled in the name of **Pierre Mulacek**—more than would be exempt under the Texas Property Code;[32]

e. **Phil Mulacek's Interest in Energy Evolution Master Fund, Ltd.,** for which he is director and executive officer, which owns 11,295,528 shares of **Empire Petroleum Corp.** common stock with a value of **$33,773,628.72** as of March 12, 2026;[33]

f. **Phil Mulacek's Interest in Mineral Resources Acquisition Corporation**, which is an ultimate owner of multiple limited liability companies, which own oil and gas interests in Texas, Louisiana, and other states.[34] These limited liability companies are managed by Phil Mulacek's family members, Alain Vinson, Marc Vinson, Sterling Mulacek, and Gerard Jacquin. To the extent they

---

[28] Declaration of Richard A. Schwartz, Exhibit A-5, ExxonMobil July 21, 2016 press release.

[29] Declaration of Richard A. Schwartz, Exhibit A-6, InterOil Corporation News Release February 22, 2017 - PR Newswire: https://www.prnewswire.com/news-releases/interoil-announces-completion-of-exxonmobil-transaction-300412075.html.

[30] The number of shares and values for "InterOil buyout" and "InterOil Escrow" have been extracted by AI from the Form 8949 and have not been verified due to time and expense in making the analysis. However, the numbers are presented so the court may see the existence of substantial non-exempt assets and not necessarily the exact number of the assets.

[31] Declaration of Richard A. Schwartz, Exhibit A-7, Opinion of Supreme Court of the State of New York Appellate Division, First Judicial Department, May 5, 2026.

[32] Declaration of Richard A. Schwartz, Exhibit A-8, Westlaw Advantage – PeopleMap Report May 26, 2026. See also, Antique Racing Cars held as "family" vehicles: **https://url.us.m.mimecastprotect.com/s/V0lVC1wBORCxxN51cLfwSVtdW_?domain=petrolicious.com** and **https://url.us.m.mimecastprotect.com/s/2m0pC2k1PVsWWzOvF1hXS5hsFu?domain=hotcars.com/**

[33] Declaration of Richard A. Schwartz, Exhibit A-9, Energy Evolution Master Fund, Ltd. Form 4, signed by Sterling Mulacek January 7, 2026.

[34] Declaration of Richard A. Schwartz, Exhibit A-10, Mineral Resources Corporate structure chart.

are single member LLCs with no operations, they may be subject to liquidation by the Receiver after further investigation. [35]

g. **Phil Mulacek's Condominium** at 10 Newton Road #18-01 in Singapore worth at least SNG **$5.1 Million Dollars** transferred to Sterling Mulacek on February 12, 2026 by contract dated December 31, 2025, *after* the December 4, 2025, verdict against Phil Mulacek in this case.[36] Applicant believes Phil Mulacek continues to live at this address.

h. **One 1957 AC Bristol registered to Michelle Mulacek Vinson**.[37]

i. **One 1958 AC Bristol Roadster registered to Mauricette Mulacek**.[38]

As these assets are traced to Respondents, a presumption arises that the judgment debtors possess these nonexempt assets subject to turnover and the burden shifts to the judgment debtors to account for the assets. Applicant requests that the Court order Michelle Mulacek Vinson and Mauricette Mulacek to turn over the 1957 AC Bristol and 1958 AC Bristol, respectively, to the U.S. Marshal's Office; that after the vehicles are turned over, that the Marshal's Office conduct an execution sale of the vehicles according to law and that the proceeds of the sale, after such deductions as authorized by law, be paid to Plaintiff to be applied according to law to the Court's Final Judgment; and that the Court order Defendants Michelle Mulacek Vinson and Mauricette Mulacek to make arrangements for turnover by contacting the U.S. Marshals' Office, Southern District of Texas, 514 Rusk St., Houston, Texas 77002, 713-718-4800.

---

[35] *See Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830 (Tex. App.—Houston [14th Dist.] 2023, no pet.) and *Gillet v. ZUPT, LLC*, 523 S.W.3d 749 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

[36] Declaration of Richard A. Schwartz, Exhibit A-11, Land Titles Act Transfer.

[37] Declaration of Richard A. Schwartz, Exhibit A-12, Westlaw Advantage PeopleMap Report, at 82.

[38] Declaration of Richard A. Schwartz, Exhibit A-13, Westlaw Advantage PeopleMap Report, at 65.

## VII.    RECEIVER

18.    With respect to Judgment Debtors Phil Mulacek and Pierre Mulacek, Applicant requests the Court appoint a Receiver with the powers granted in the Texas Turnover Statute and the attached order, and that Judgment Debtors Phil Mulacek and Pierre Mulacek be ordered to turn over to the Receiver all documents and property listed in Exhibit "A" to the Proposed Order Granting Turnover and Appointing Receiver (the "Property").

## VIII.    INJUNCTION

19.    Applicant requests Respondents be enjoined from (a) encumbering or transferring property to anyone, except in the ordinary course of business, and (b) concealing Respondents' property, including through the use of third parties, family members, relatives, companies, trusts, agents, attorneys, pseudonyms or assumed names. Plaintiff requests that the Receiver's bond also serve as the bond for the injunction.

## IX.    COMPENSATION TO RECEIVER

20.    Applicant requests that the Receiver be paid from the funds recovered a fee of $500.00 per hour for the number of hours he works, plus two percent (2%) of the net funds recovered during the receivership, subject to a later determination by the Court as to reasonableness based on evidence presented by the Receiver as to the work performed and the results obtained, as required by *Klinek*.[39] For clarification, the net contingency shall be calculated as follows: gross proceeds less (all expenses of the Receiver plus the $500 per hour fee) x 2%. The Receiver's fee will be taxed as a cost of court and will be added to the Judgment owed by Judgment Debtors. In addition, the

---

[39] 672 S.W.3d at 842.

13

Receiver should recover from Phil Mulacek and Pierre Mulacek, all reasonable and necessary attorneys' fees for services rendered by any counsel retained by the Receiver, reasonable out-of-pocket expenses in performing his duties as Receiver, including not limited to accounting expenses, expert witness expenses or other fees or expenses that the Receiver may incur. If, after instigation of the Receivership, the case is settled between the parties and the parties move to dissolve or dismiss the receivership, Plaintiffs request the Receiver be paid a fee equal to $500.00 per hour plus all out-of-pocket costs incurred by the Receiver.

## X.    BOND

21.    Because this is a post-judgment receivership, no bond is required. If the Court requires a bond, Applicant suggests a bond of no more than $500.00.

## XI.    ATTORNEYS' FEES

22.    Applicant has been required to employ counsel to file this application and is entitled to reasonable costs, including attorneys' fees and expenses, for preparing and urging this Application.[40]  Plaintiff requests the court determine the amount by motion to be filed fourteen days after grant of this application.

## XII.   PRAYER

23.    Applicant requests the Court grant this Application and order:

    a.  That David Fettner is appointed Receiver and the Receiver's bond be waived or, alternatively, set at $500.00;

    b.  That Respondents Phil Mulacek and Pierre Mulacek deliver the Property, with necessary documents, properly endorsed for transfer to the Receiver, for disposition in accordance with law and the Court's

---

[40] *See* Tex. Civ. Prac. & Rem. Code § 31.002(e).

Order Granting Motion for Turnover and Appointment of Post-Judgment Receiver;

c. That Michelle Mulacek Vinson and Mauricette Mulacek turn over the vehicles described herein to the U.S. Marshal's Office, that the vehicles be sold in accordance with law, and that the proceeds be delivered to Applicant, after offset of the U.S. Marshal's fee and costs, in reduction of the judgment and all amounts awarded since judgment;

d. That Applicant have judgment against Respondents for all costs incurred, including reasonable attorneys' fees and Receiver's fees and expenses;

e. That Respondents be enjoined from concealing or transferring any property, except in the ordinary course of business, until the receivership is closed and the judgment paid in full; and

f. Applicant requests that the Court grant all other relief, at law or in equity, that the Court deems appropriate.

Intentionally Left Blank

Respectfully submitted,

/s/ *Richard A. Schwartz*
Richard A. Schwartz
Texas Bar No. 17869450
Federal ID No. 5344
Michael A. Harvey
Texas Bar No. 24058352
Federal Bar No. 917759
MUNSCH HARDT KOPF & HARR, PC
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: (713) 222-4076
Facsimile: (713) 222-5869
dschwartz@munsch.com
mharvey@munsch.com

Michael B. Martin
State Bar No. 13094400
Federal ID No: 8824
Martin Walton Law Firm
699 S. Friendswood Dr., Ste. 106
Houston, Texas 77546-4580
(713) 773-2035
(832) 559-0878 (fax)
mmartin@martinwaltonlaw.com

Andrew B. Bender
Texas Bar No. 24084290
Federal Bar No. 2319228
Sharon McCally
Texas Bar No. 13356100
Federal Bar No. 324660
ANDREWS MYERS P.C.
1885 Saint James Place, 15th Floor
Houston, Texas 77056
713.850.4200
abender@andrewsmyers.com
smccally@andrewsmyers.com

**Counsel for Carlo Giuseppe Civelli**

16

## CERTIFICATE OF CONFERENCE

On June 1, 2026, counsel for Applicant conferred with Respondent's counsel regarding the substance of this Application and the relief being sought. Respondent's counsel stated that they are opposed to this Application and the relief being sought by Applicant.

*/s/Richard A. Schwartz*
Richard A. Schwartz

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was electronically filed with the Clerk of the Court on June 1, 2026, using CM/ECF, and served on all counsel of record.

*/s/Richard A. Schwartz*
Richard A. Schwartz